# PHILIP CAREY COMPANY v. THYSON.

---

PRINCIPAL AND AGENT; CORPORATIONS; VARIANCE; DIRECTION OF VERDICT.

1. A party dealing with the agent of a corporation must at his peril ascertain what authority the agent possesses, and is not at liberty to charge the corporation by relying upon the assumption of authority.

2. In an action to recover commissions alleged to be due under a contract of employment, the court should direct a verdict for the defendant, where a fatal variance exists between the contract alleged and the contract proved.   (Following *Hamburg-Bremen Ins. Co.* v. *Lewis*, 4 App. D. C. 66; *District of Columbia* v. *Donaldson*, 38 App. D. C. 259.)

No. 2405.   Submitted October 15, 1912.   Decided November 4, 1912.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, upon verdict for the plaintiff, in an action to recover commissions alleged to be due under a contract of employment.                    *Reversed.*

The facts are stated in the opinion.

*Mr. Charles L. Frailey* and *Mr. A. S. Worthington* for the appellant.

*Messrs. McNeill & McNeill* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This suit was brought in the supreme court of the District of Columbia by appellee, William F. Thyson, hereafter referred to as plaintiff, against the appellant corporation, the Philip Carey Company, defendant below, for the sum of $2,500 alleged to be due upon a contract of employment.   The contract is set out in the declaration as follows:   "The plaintiff was employed by the defendant as selling agent for the sale and distribution of the products of the said defendant corporation,—to wit, its paint and roofing material,—at and for an agreed compensation to the plaintiff equivalent to 5 per cent of the gross amount of all sales made by the defendant corporation in the city of Baltimore, State of Maryland, and parts of the States of Virginia and West Virginia, included in what is known as the Baltimore territory of the defendant company.   That the plaintiff was to have charge, supervision, and control of said sales for the said territory, and was to receive the said compensation

equal to 5 per cent of all sales made by the defendant corporation in the said territory during the term of plaintiff's employment."

Defendant claims that plaintiff was employed at a salary of $125 per month, which was later increased to $150 per month, which sum was paid plaintiff from month to month during his employment, and receipted for by plaintiff. The total amount thus paid plaintiff was $1,500, while he claims that during the period of his employment defendant sold $80,000 worth of goods within the territory described, upon which he was entitled to a commission of 5 per cent, or $4,000. The suit is for the difference, $2,500. The case was tried to a jury, and a verdict returned for plaintiff for the sum of $831.88, with interest from May 6, 1910. From the judgment thereon, this appeal is prosecuted.

It appears that plaintiff's employment was accomplished through certain correspondence between the home office of defendant company in Cincinnati, Ohio, and its local manager in Baltimore, Maryland. On March 23, 1909, N. S. Kenney, the Baltimore manager, wrote to R. B. Crabbs, vice president of the defendant company, in part, as follows: "In looking over the record of Mr. H. Z. Meginnis, I find that his efforts have availed about the same kind of results as all previous salesmen we have had in the territory. I am thinking very strongly of dispensing with his services on the first of the month and I am able at the present time to secure one of the best men for our business that I have been able to meet so far. While he is a high-priced man, yet I believe I can get him at much less salary than he is getting at the present time, because he is rather anxious to come with us, thinking that his ability as a salesman will secure for him a better future. He has about reached his limit in the business in which he is now associated, and is willing to take a trial with us. I believe, however, that I cannot get him for less than $125 per month.    *    *    *    Therefore, I would ask that you give me your approval to secure the services of the man referred to. His name is Frank W. Thyson, thirty years old, married, living in Baltimore."

To this letter Crabbs replied on March 27th, as follows: "With reference to putting F. W. Thyson on the roll at $125 per month, this is quite an increase in your selling expense when you take into consideration the fact that you have put Mr. Huggins on the roll at a good salary, and while we would like very much to have you secure the services of Mr. Thyson in view of the opinion you hold of him, we would suggest that you make an effort to secure his services for $125 per month, with the understanding that we are to pay him in salary the equivalent of 5 per cent on his sales, the $125 per month simply representing a drawing account. We have established a policy of paying all our salesmen in so far as possible, according to their results based upon 5 per cent of their gross sales. This is simply a figure used for figuring out what they are actually worth to us. Suggest you put this proposition up to Mr. Thyson and see what he thinks about it."

Kenney replied to this letter on March 30th, as follows: "I have decided to follow out your approval of Mr. Thyson at $125 per month, pay to start 1st of April, giving him the entire State of Maryland as his territory."

On September 28, 1909, Crabbs wrote Kenney as follows: "Your favors of the 13th and 22d received upon my return to the Lockland office, and I note your recommendations with reference to increasing Mr. Thyson's salary, and since our records do not give us a line on his work, we take it for granted that you are thoroughly familiar with all he is doing, and would not make the recommendation unless you felt he was fully entitled to the amount. It is on these grounds that we are approving same, and his name will appear on the pay roll, starting as of September 1st at $150 per month."

On the trial plaintiff testified to the contract as alleged in his declaration, while Kenney testified that the contract was for a fixed salary of $125 per month from April 1st, which was increased on September 1st to $150 per month. The evidence of plaintiff cannot be considered in the light of the correspondence. The local manager, acting within the scope of his agency, could not bind defendant beyond the terms expressed in the

correspondence. That the action of the local manager was limited to the authority conferred by the correspondence is conceded. Counsel for plaintiff stated at the trial: "Our theory is that he (witness Kenney, defendant's Baltimore agent) was bound by the action of his home office and had no authority to do anything contrary to that, and that letter speaks for itself" (referring to Crabbs' letter of March 22d). Plaintiff testified that he saw the correspondence when he was employed. Under these circumstances plaintiff was dealing with an agent whose delegated power was limited to the authority conferred by the correspondence with his principal. In such a case, "a party dealing with the agent of a corporation must at his peril ascertain what authority the agent possesses, and is not at liberty to charge the corporation by relying upon the agent's assumption of authority, which may prove, as it did in this case, to be entirely unfounded." *Rice* v. *Peninsular Club,* 52 Mich. 87, 17 N. W. 708. To the same effect it was held by the supreme court in *The Floyd Acceptances* (*Pierce* v. *United States*) 7 Wall. 666, 19 L. ed. 169. It is conceded, however, that plaintiff did not rely upon any assumption of authority by Kenney, but that the scope of Kenney's agency was fully disclosed to him at the time he entered defendant's employment.

It is contended by counsel for defendant that the court erred in not directing a verdict as requested for defendant, on the ground that a fatal variance exists between the contract alleged and the contract proved. This brings us to an analysis of the letters which disclose the contract actually made between plaintiff and defendant.

The inception of the negotiations looking to plaintiff's employment is found in Kenney's letter of March 23d, in which he states that he desires to dispense with one of the salesmen in the territory, and suggests the employment of plaintiff. He states that he cannot secure the services of plaintiff for less than $125 per month, which will increase the monthly expense $60. Nothing is said in this letter about commission. This letter was replied to by Mr. Crabbs on March 27th. He states that the employment of plaintiff at $125 per month will con-

siderably increase the expense of the Baltimore office, and suggests that he be employed at $125 per month, with the understanding that he is to be paid a salary the equivalent of 5 per cent on his sales, the $125 per month simply representing a drawing account. He then qualified this statement to mean, in substance, that the 5 per cent is to be regarded as a basis of determining what the services of plaintiff are actually worth.

It will be observed that to this point nothing has been suggested in the correspondence in respect of making plaintiff manager of the roofing department of the Baltimore branch. In fact, if given the construction contended for by counsel for plaintiff, the 5 per cent in Crabbs' letter refers specifically to "his sales," meaning plaintiff's without reference to the gross sales of the roofing department. That the understanding of the parties at this time was that plaintiff was being employed at a fixed salary of $125 per month as an individual salesman for the Maryland territory alone is confirmed by Kenney's letter of March 30th. In the application for employment appearing in the record, dated March 30th, sent to the main office, the salary is fixed at $125 per month, without any reference to commissions. The first receipt for salary reads as follows: "4, 30, 1909. Received of the Philip Carey Company one hundred and twenty-five dollars salary in full for April, 1909. $125." Receipts for May and succeeding months, except that from September on the amount was $150 per month, read as follows: "6, 1, 1909. Received of the Philip Carey Company $125 for May salary. $125." The last receipt is dated March 1, 1910, and reads as follows: "3, 1, 1910. Received of the Philip Carey Company $106.25 for seventeen days' salary, February, 1910." Across the face of this receipt was written the word "Thanks." Plaintiff could not remember, when questioned upon the witness stand, when it was after leaving the employ of defendant that he first made a demand for the commission which is the basis of this action. He testified that he had access to the monthly reports of the Baltimore office, and must, therefore, have been familiar with the amount of sales upon which commission is claimed, not

only at the date of his employment ceased, but from time to time during the period of his employment.

We think the correspondence admits of but one interpretation, that plaintiff was employed at a salary of $125 per month, which was later increased to $150; that he was employed as salesman for the State of Maryland alone, and that 5 per cent of his individual sales within that territory was tentatively suggested by defendant merely as a basis for determining the amount of his fixed salary. This conclusion is verified by the fact that his advancement from salesman for Maryland to manager of the roof department, so far as the record discloses, was solely upon the assumed authority of Kenney; that the receipts were given from month to month for payments of salary, and that no claim was made by plaintiff for commissions during the period of his employment or at the time his employment ceased.

The contract was one beyond the power of the local manager Kenney to make, except in so far as authorized by defendant, and the only evidence of defendant's authorization is the foregoing correspondence. Its terms are plain, and should not have been submitted to the speculation of the jury. We are of opinion that the contract was for a fixed salary, and that there is a fatal variance between the contract proved and the one sued upon. The trial court, therefore, should have granted the instruction to return a verdict for defendant. *Hamburg-Bremen Ins. Co.* v. *Lewis,* 4 App. D. C. 66; *District of Columbia* v. *Donaldson,* 38 App. D. C. 259.

The judgment is reversed, with costs, and the cause remanded for further proceedings in accordance with this opinion.                                                  *Reversed.*