FEDERAL RESERVE BANK OF PHILADELPHIA, A CORPO-
RATION, ETC., PLAINTIFF-APPELLANT, v. MORRIS
GETTLEMAN AND M. GETTLEMAN, FURS, INCORPO-
RATED, DEFENDANTS-RESPONDENTS.

Argued October 23, 1936—Decided January 22, 1937.

For the plaintiff-appellant, *Cole & Cole.*

For the defendants-respondents, *Bolte & Miller.*

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The plaintiff appeals from a judgment in favor of the defendants in an action to recover on four promissory notes, amounting to about $9,500. These were the facts: The defendants were answerable on the notes, on two of them as endorsers and on the remaining two as makers. All were payable at the Atlantic City National Bank, which had discounted the paper. The due date of two of the notes was January 30th, 1933, the due date of the others February 20th, 1933, and February 28th, 1933, respectively. The Atlantic City National Bank, the payee, was a member of the Federal Reserve Bank of Philadelphia, the plaintiff herein, and had, before maturity, pledged these notes and others with the Federal Reserve Bank of Philadelphia.

On January 27th, 1933, several days before the due date of any of the obligations, the defendants sent their book-keeper to the Atlantic City National Bank with checks drawn on their personal or corporate funds on deposit in the payee bank (except one check for $1,000 drawn on another bank) in an amount sufficient to take up these evidences of indebtedness. The note-teller took the checks tendered by the young lady bookkeeper. He was unable to return the notes to her since, as mentioned above, they were lodged with the Federal Reserve Bank of Philadelphia as part pledge for the collateral loan of the payee bank. The bookkeeper did not ask for the notes nor did the teller explain why he did not return them to her. She asked for and received a receipt, however, showing the transaction.

The bank failed to open on the following Monday, which was January 30th, 1933, because of insolvency. It is admitted that the borrowers were never informed that their notes were pledged with the Federal Reserve Bank by the payee bank, but the note-teller testified that upon receipt of defendants' checks on January 27th, 1933, he telephoned to the Federal Reserve Bank and requested that defendants' notes be returned to the payee bank since they had been paid. The person to whom this witness spoke, and whom he didn't identify, refused to do so, saying, "there wasn't sufficient balance to return the notes." What we assume is meant by that state-

ment is that if the notes in question were returned it would mean a depletion of the collateral security below the requirements in such matters. Continuing his testimony, the note-teller said that upon being told by the Federal Reserve Bank that the defendants' notes in question would not be returned, he didn't put the defendants' checks through, *i. e.*, he did not charge or debit their account in the Atlantic City National Bank, nor did he notify the defendants about the situation.

In due course the Federal Reserve Bank brought suit upon these notes so held. The defense was that the notes were paid to the Atlantic City National Bank as agent of the plaintiff.

At the trial the court rejected plaintiff's motion for a directed verdict, thinking that there was sufficient evidence from which the jury could find an implied agency, because of the course of conduct and custom between these banks, and therefore submitted the case to the jury on this theory. It was not disputed but that from time to time the Federal Reserve Bank sent notes, which it had discounted or held as collateral, to its member bank, Atlantic City National Bank, whether the paper was payable there or at some other bank, some days before maturity, for collection or substitution, with specific instructions in case of payment, non-payment or substitution of security. This practice defendants contend was enough to make out implied agency. Whether it did is the main question in the case.

It is elementary of course that a party who would hold another on the theory of agency must prove it and in this case, therefore, it is clear that the defendants have the burden to show that the payee bank was authorized to receive the payment for the plaintiff. Ordinarily, in the case of negotiable paper, the person answerable does not pay the original payee if he is not in possession of the note, except at his own risk. The contract of the person answerable on negotiable paper is to pay the holder of the note and the place for payment is designated for the convenience of both parties.

"If maturing paper be left with the banker for collection, he becomes the agent of the holder to receive payment; but unless the banker is made the holder's agent by deposit of the

paper with him for collection, he has no authority to act for the holder." *Adams* v. *Hackensack Improvement Co.*, 44 *N. J. L.* 638 (at *p.* 646).

Defendants knew from their bookkeeper, or were chargeable with knowing, that the payee bank did not have their notes on January 27th, the day their checks were given to redeem the notes. Their obligation was to pay the holder or one with authority to collect for the holder. No agency to collect arises from the fact that payee bank was a member of the Federal Reserve Bank of Philadelphia. The Federal Reserve Bank and its member banks are separate and distinct corporate entities and no relationship of agency exists between them except such as arises from contract. *Federal Reserve Bank* v. *Early*, 30 *Fed. Rep.* (*2d*) 198; *Early* v. *Federal Reserve Bank*, 281 *U. S.* 84; *Bank of Richmond* v. *Kalin*, 81 *Fed. Rep.* (*2d*) 1003, 1005.

In support of the judgment, it is earnestly argued by the respondents that it was customary for the borrower, a business concern in Atlantic City, to pay notes discounted at the payee bank prior to maturity and that frequently the payee bank accepted payment of notes discounted with it prior to maturity, notwithstanding that such notes were not, at the time of the payment, held by or in the possession of the Atlantic City National Bank.

There is no basis for the statement that the defendants knew that their notes, now being discussed, or any former obligations of theirs, were hypothecated or rediscounted with the plaintiff bank, nor is there any evidence that the defendants were misled by knowledge of any custom or general practice between the plaintiff bank and its member. The evidence is that in the ordinary course of business, a few days before maturity, the plaintiff bank sent to its member bank, in Atlantic City, notes for collection and on these, of course, an agency to collect existed. But in the absence of such transmission for collection, if a borrower paid the amount due on an obligation rediscounted or pledged elsewhere, the payee bank became agent not for the holder but for the person making the payment. The evidence from witnesses who were formerly in the employ of the insolvent bank did show that it

did receive payments on notes rediscounted or pledged with the plaintiff bank and that these obligations were surrendered to the payee bank when the amount of the debt was transmitted to the Federal Reserve Bank. This amounts to nothing more than that the Federal Reserve Bank was willing to accept payment of notes of which it was the holder. It did not create a general agency for collection. In the present case the moneys were not transmitted to the plaintiff; in fact, the drafts were not charged against defendants' accounts in the payee bank and the bank balance sheet later sent defendants showed the amounts of the balances to include the total of the checks.

One more element in this case should be mentioned. It so happened that two of the notes that matured January 30th, 1933, were, along with many others, actually sent to the Atlantic City Bank for collection, arriving apparently on January 30th, the date the bank failed to open. The envelope containing all these notes, together with letter of instructions that accompanied them, found its way back to the plaintiff bank unopened. Thus the agency so conferred by the letter of instruction never became effective as to these two notes because the Atlantic City National Bank never accepted the particular agency. It is fundamental that an agent must be notified of his agency and accept same. Therefore, at the time the payee bank accepted the defendants' checks, no agency existed and when the two notes of defendants were sent on for collection, the payee bank never accepted the appointment because it could no longer function.

The main question whether agency could be implied from circumstances like these is entirely settled. A line of cases of the highest authority settles the rule that the payee of negotiable paper, who has assigned it to or pledged it with another, is not the agent of that other for its collection; that payment to payee under such circumstances does not discharge the debt; that such payee, under such conditions, is not the agent of the holder unless the paper be sent to such payee for collection; that in the absence of such authority to collect, a payee receiving money from the debtor, accepts it as agent of the debtor and not the holder. *Cheney* v. *Libby*,

134 *U. S.* 68; *Ward* v. *Smith,* 7 *Wall* 447; *Smith* v. *Kidd,* 68 *N. Y.* 130.

There having been therefore no evidence that the Atlantic City National Bank was agent for the plaintiff bank to collect these notes, the defense failed and it was error to reject the plaintiff's motion for a directed verdict in its favor.

The judgment is therefore reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 14.