**FEDERAL RESERVE BANK OF PHILA-DELPHIA v. ALGAR et al.**

**No. 6425.**

Circuit Court of Appeals, Third Circuit.

Feb. 7, 1938.

On Reargument Jan. 6, 1939.

BIGGS, Circuit Judge, dissenting.

———————

C. L. Cole, of Atlantic City, N. J., James S. Clifford, Jr., and MacCoy, Brittain, Evans & Lewis, all of Philadelphia, Pa., and Cole & Cole, of Atlantic City, N. J., for appellant.

Allen B. Endicott, Jr., and Endicott & Endicott, all of Atlantic City, N. J., for appellees.

Before BUFFINGTON and BIGGS, Circuit Judges, and WATSON, District Judge.

BUFFINGTON, Circuit Judge.

In the court below the Federal Reserve Bank of Philadelphia (hereafter called Federal) brought suit against the defendants to recover on a note given by them to the Atlantic City National Bank, Atlantic City, N. J. (hereafter called Bank), which note was thereafter discounted and owned by Federal. On trial there was a verdict for defendants and on entry of judgment Federal took this appeal, and the question involved is whether the court erred in refusing Federal's request for binding instructions in its favor.

After consideration had, we are of opinion that under the proofs the court would have erred had it refused to send the case to the jury. By reference to the opinion of the court below on a motion for a new trial, we avoid repetition and rest our decision on such opinion. In doing so we note that in Federal Reserve Bank of Richmond v. Kalin, 4 Cir., 81 F.2d 1003, 1004, the lacking proofs were as noted, "Defendant introduced no evidence to show that plaintiff had authorized the payee bank to collect the note sued on or any notes other than those sent payee from time to time for collection"; a situation decidedly different from that in the present case. Here we have the testimony of Riley, the note teller of Bank, who testified:

"Q. After you had received Mr. Algar's check and issued a receipt what did you next do with respect to this transaction? A. I put the check through the work and then went to the telephone and called the Federal Reserve Bank, the discount department.

"Q. Did you reach the Federal Reserve? A. I did.

"Q. To what department did you talk? A. Discount department. * * *

"Q. And what response did you receive from the discount department of the Federal Reserve when you reported payment of the Algar note? A. O. K."

Another employee of Bank testified, "we have been borrowing money from the Federal Reserve for four or five years before that off and on," and that during all these four years previous Bank had sent out ·notices to its customers that their notes might be paid on the due date at the Bank, even though these notes had been pledged to the Federal Reserve, and that it was the custom of that bank, a few days before the notes fell due, to send them to the Atlantic Bank; that notes were paid before maturity several times a week. As to the customary practice, the witness testified:

"Q. And can you tell us with whom you may have discussed these matters? A. Many times with Mr. Davis.

"Q. And when I say discussed papers, do you understand I mean the collection of the customers' notes? A. I mean the method of dealing with the Federal Reserve and with my customers.

"Q. And was your course of conduct, or the course of conduct of the Atlantic City National Bank, the result of the instructions you had received from Mr. Davis and others in that regard? A. We always tried to co-operate, certainly.

"Q. Was the answer yes? A. Certainly.

"Mr. Endicott: That is all."

## Cross-Examination.

"By Mr. Cole:

"Q. Did the Atlantic City National Bank have written instructions from the Federal Bank touching the terms under which collateral was held and of the disposition to be made of it? A. There are a vast number of bulletins received from them. * *

"Q. Then it is not your contention that you always took up the telephone and told the Federal? A. Yes.

"Q. Always? A. Yes."

The practice of receiving calls was testified to by an executive officer of Federal:

"Q. Was it the practice of your department to receive ·telephone calls reporting the payment of notes which you held as col-·lateral when the notes had been paid in the bank, from which you had taken it as collateral? A. We received frequent calls from all over the district."

Under the proofs as to the customary practice between· Bank and Federal and in view of the telephone conversation in regard to this particular note, we feel the court was justified in submitting the question of agency to the jury. The judgment below is, therefore, affirmed.

## On Reargument.

After argument and full consideration had, we see no reason to change the views expressed in the original opinion. Accordingly, the judgment below is affirmed.

BIGGS, Circuit Judge (dissenting).

Upon December 12, 1932, the appellee, Reba Cook Algar, made and delivered to Atlantic City National Bank at Atlantic City her promissory note in the sum of $2,000 payable within two months at the bank. The note was endorsed by Leonard Algar and Algar Company, the two other appellees. Federal Reserve Bank of Philadelphia, the appellant, purchased the Algar note from the Atlantic City Bank.

Upon January 27, 1933, the Algar Company, by its bookkeeper, gave its check to the Atlantic City Bank in payment of the note. The Atlantic City Bank charged the amount of the check of the Algar Company to the Algar Company's account with it. The Algar note however was never returned to the Atlantic City Bank and is the subject of the suit at bar.

At the time that the Algar Company's bookkeeper went to the Atlantic City Bank with the company's check he conferred with the note teller, Riley, who told him that the note could not be returned at that time because it was held by the appellant. The bookkeeper gave this information to Leonard Algar. No entry was made upon the books of the Atlantic City Bank indicating that the note had been paid. Within a few days after the note was paid the Atlantic City Bank failed and a receiver was appointed for it by the Comptroller of the Currency. The Federal Reserve Bank now seeks to recover the amount of the note from its maker and endorsers who plead payment.

In proof of this issue the note teller, Riley, testified as follows:

"I put the (Algar Company's) check through the work and then went to the telephone and called the Federal Reserve Bank, the discount department.

"Q. Did you reach the Federal Reserve? A. I did. * * *

"Q. Mr. Riley, what was the practice at the Atlantic City National Bank when notes were paid to you before maturity, when the notes had been sent to the Federal Reserve? * * * A. My practice was to accept the check in payment of the note, rebate the interest and in many cases give a receipt for the check and in turn recall the note from the Federal Reserve Bank.

"The Court: What happened with relation to the payment? What was done with the moneys charged to the account, of Algar & Company in this instance, what happened to the money?

"A. It was usually paid to me by check, which would go through the work, and then I would credit that amount of money to bills receivable on the bank's books.

"The Court: Anything done in relation to the Federal Reserve?

"A. We would recall the note. My practice was to recall the note from the Federal Reserve on the date the note was paid.

"The Court: Did not the Federal Reserve get any credit? To whose credit did it go in the bank?

"A. In the bank's books as bills receivable, credited to that account, and the Federal Reserve would return the note to us and charge our account.

"Q. Now, Mr. Riley, by what means was it your custom to notify the Federal Reserve of the payment? A. Usually by telephone.

"Q. And on how many occasions had that happened during the three months previous to the transaction in question? A. Well, it has a common occurrence.

"Q. As often as three times a week? A. Possibly, and possibly more than that. Sometimes as high as three times a day.

"Q. And when you telephoned to the Federal Reserve, whom did you ask for? A. The discount department.

"Q. And that you did on the occasion when you reported the payment of the Algar note? A. That is correct.

"Q. And what response did you receive from the discount department of the Federal Reserve when you reported payment of the Algar note? A. O.K."

The identity or authority of the person making the reply "O.K." was not shown.

Lemuel E. Conover, Jr., the cashier of the Atlantic City Bank, testified as follows:

"Q. What was the custom between the Federal Reserve and the Atlantic City National Bank respecting the collection or renewal or servicing of customers' paper?

"The Court: Where it had been pledged as collateral?

"Q. Where it had been pledged as collateral to the Federal Reserve? A. They were treated in the same manner as if we owned the notes outright.

"Q. Did your bank send out notices that the notes were about to become due? A. We did.

"Q. Were your customers informed that the notes had been pledged with the Federal Reserve? A. No.

"Q. Was there anything done to apprise them in any way that their notes had been turned over to the Federal Reserve? A. No.

"Q. Was it your custom to accept renewals, or renewals with part payment of your customers' notes when those notes had been pledged with the Federal Reserve? A. Yes.

"Q. Was that frequently done? A. Yes.

"Q. Had it happened in your bank prior to January 27, 1933, that customers' notes pledged with the Federal Reserve had been paid prior to maturity? A. Yes.

"Q. How often had it been done? A. It happened frequently.

"Q. Do you know what the custom in your bank was with respect to reporting prepayments of such notes to the Federal Reserve? A. It was the note clerk's custom to get in contact with the Federal Reserve, the discount department, and tell them and have the note returned.

"Q. By what means did he get in touch with them?

"Mr. Cole: That I object to. It seems he must be testifying from hearsay.

"The Court: Yes, unless the witness knows how that was done. You could not testify to that by reason of hearsay.

"The Witness: I know that he actually did that. I know that.

"Q. You know that he actually telephoned the report to the Federal Reserve? A. Yes.

"Q. Prior to January 27, 1933, did the Federal Reserve ever question your right to service notes pledged with it? A. Not to my knowledge.

"Q. That is to say accept payment in full or on account of renewals? A. No.

"Q. And was it your universal practice to act for the Federal Reserve in the handling of the notes which had been so pledged? A. It was."

William Alcorn, the chief clerk of the Atlantic City Bank, testified as follows:

"Q. Do you know of any occasions when notes, which had been pledged with the Federal Reserve, had been paid before maturity at the Atlantic City National Bank? A. Yes, many.

"Q. And had that occurred on more than one occasion prior to January 27, 1933? A. Yes.

"Q. How often? A. Well, two or three, maybe four times a week. Just as it might happen to be.

"Q. And what was the customary procedure when a note was paid to the Atlantic City National Bank prior to maturity, assuming that the note had been pledged with the Federal Reserve? A. May I clear up the question of the bookkeeping on that? Our bookkeeping, is that what you mean?

"The Court: All of the proceedings that includes.

"A. The money was paid, or a check, and immediately the amount was credited to bills receivable. As far as the Atlantic City National Bank was concerned then that note does not exist. The bills receivable are the bills that we have loaned money on. The fact that the notes are not in our possession are out of the bank, is a record which is kept entirely on the side. As if a bank examiner came into examine the bills receivable or notes in our possession, plus the notes in possession of the Federal Reserve, or wherever else they might be borrowed on, which is a ledger record on the side it would equal the amount in the bills receivable. So when a note is paid to us, as far as we are concerned, it is wiped out, but we have not made any record whatsoever against the notes which are collateral notes.

"The Court: What happens in your books with relation to your account you set up with the Federal Reserve as to collateral, is that wiped out?

"The Witness: The Federal Reserve was credited with that note when they sent it back to us.

"The Court: When it came back they were credited?

"The Witness: Do not misunderstand me in money. They were credited with the note. They are charged with the Algar note and when that note comes back to us they are credited with having returned the note.

"The Court: And that is all that occurs on your books?

"The Witness: Yes.

"The Court: You do carry a ledger account showing you owe the Federal Reserve a certain amount of money?

"The Witness: Yes."

The Assistant Deputy Governor of the Federal Reserve Bank testified that all notes held by the Federal Reserve Bank were forwarded to the originating bank under trust receipts. The form of the trust receipts used required that all notes forwarded for payment be held in trust until paid and that all payments should be remitted promptly.

The question presented for our determination is whether the Federal Reserve Bank constituted the Atlantic City Bank an agent to receive payment of the note in suit.

It is obvious that there was neither express agency nor ratification by the Federal Reserve Bank of the act of the Atlantic City Bank in receiving payment of the Algar note. If the decision of the court below is to be sustained it must be upon proof of the existence of agency by custom.

Agency by custom may be proved by showing such a course of conduct in the past between the parties as principal and agent as would indicate that a particular transaction of later occurrence between the parties is within the same category. The evidence offered by the appellees in proof of this issue is insufficient to support it. All of the testimony which may be considered pertinent has been set forth in this opinion in haec verba. Giving it its fullest significance, it proves nothing more than that the Federal Reserve Bank permitted the Atlantic City Bank to service notes held by the former bank. As the note teller, Riley, testified, upon certain occasions, the " * * * Federal Reserve would return the note * * * and charge" the account of the Atlantic City Bank. In the

case at bar, the note was not returned and the Federal Reserve Bank did not charge the payment against the account of the Atlantic City Bank. The appellees therefore have failed to sustain the burden of proof required to establish agency by custom.

This conclusion is in accordance with the decision of the Court of Errors and Appeals of New Jersey in Federal Reserve Bank v. Gettleman, 117 N.J.L. 416, 189 A. 86, binding upon this court under Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. In the Gettleman Case the Court of Errors and Appeals stated [page 87]:

"It is elementary, of course, that a party who would hold another on the theory of agency must prove it, and in this case, therefore, it is clear that the defendants have the burden to show that the payee bank was authorized to receive the payment for the plaintiff. Ordinarily, in the case of negotiable paper, the person answerable does not pay the original payee if he is not in possession of the note, except at his own risk. The contract of the person answerable on negotiable paper is to pay the holder of the note, and the place for payment is designated for the convenience of both parties.

" 'If maturing paper be left with the banker for collection, he becomes the agent of the holder to receive payment; but unless the banker is made the holder's agent by a deposit of the paper with him for collection, he has no authority to act for the holder.' Adams v. Hackensack Improvement Comm., 44 N.J.L. 638, at page 646, 43 Am.Rep. 406. * * *

"The main question whether agency could be implied from circumstances like these is entirely settled. A line of cases of the highest authority settles the rule that the payee of negotiable paper, who has assigned it to or pledged it with another, is not the agent of that other for its collection; that payment to payee under such circumstances does not discharge the debt; that such payee, under such conditions, is not the agent of the holder unless the paper be sent to such payee for collection; that in the absence of such authority to collect, a payee, receiving money from the debtor, accepts it as agent of the debtor and not the holder. Cheney v. Libby, 134 U.S. 68, 10 S.Ct. 498, 33 L.Ed. 818; Ward v. Smith, 7 Wall. 447, 19 L.Ed. 207;

Smith v. Kidd, 68 N.Y. 130, 23 Am.Rep. 157."

Moreover, as in the Gettleman Case, there is no evidence in the case at bar that the appellees were misled by knowledge of any custom or general practice between the Federal Reserve Bank and the Atlantic City Bank. In its decision the Court of Errors and Appeals laid emphasis upon the absence of such testimony in the Gettleman Case.

I must conclude therefore that the conclusion expressed by us in the opinion filed prior to rehearing was erroneous. The judgment should have been set aside and the cause remanded with directions to the trial court to grant a new trial and to direct a verdict in favor of the appellant.