### JARKA CORPORATION OF BALTIMORE v. PENNSYLVANIA R. CO.

#### No. 4940.

Circuit Court of Appeals, Fourth Circuit.

Sept. 8, 1942.

George Cochran Doub and R. E. Lee Marshall, both of Baltimore, Md. (Marshall, Carey & Doub, of Baltimore, Md., on the brief), for appellant.

O. Bowie Duckett, Jr., of Baltimore, Md., and Windsor F. Cousins, of Philadelphia, Pa. (Edward E. Hargest, Jr., of Baltimore, Md., on the brief), for appellee.

Before PARKER, DOBIE, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal by a stevedoring company in an action brought against the Pennsylvania Railroad Company to recover for services in "barring" or "re-spotting" railroad cars in connection with the loading and unloading of vessels in the port of Baltimore. The case was tried by the court without a jury. D.C., 42 F.Supp. 371. The facts may be stated briefly as follows:

The case relates to rail carriage of heavy freight carried in open top cars from inland points to Baltimore and from Baltimore to inland points, and, in the one case, loaded from cars to ships and, in the other, from ships to cars. Tariffs filed with the Interstate Commerce Commission state that the rates named will apply on shipments "delivered to vessels direct from railroad owned pier" and on shipments "delivered to rail carrier direct from the ship's side".

The "barring" or "re-spotting" service is rendered in the following manner: the representative of the vessel being loaded or unloaded, notifies the railroad company to place on the track opposite specified holds of the vessel a number of cars. This service the railroad company performs without additional charge as being embraced within the duty of delivery under its contract of transportation. Where a series of cars is called for, however, only one of them can be placed within reach of the ship's tackle; and, as the loading or unloading continues, each of them must be moved to bring it within reach of the tackle. This moving is done by the stevedoring company, which is employed by the vessel for the purpose of loading and unloading, and is the basis of the charge for which recovery is sought.

The evidence discloses that prior to 1914, this movement of cars in the process of loading and unloading was done by the railroads. Beginning with 1914, however, it was done by the stevedores and an allowance was made the stevedoring companies for the service. From 1920 to 1938, this allowance was at the rate of $1.00 per car. In 1938, following the decision of the Interstate Commerce Commission in Propriety of Operating Practices 209 I.C.C. 11, approved in United States v. American Sheet & Tin Plate Co., 301 U.S. 402, 57 S.Ct. 804, 81 L.Ed. 1186, the railroads took the position that the allowance was improper and refused to make further payment for the service. Considerable negotiation followed between representatives of the railroads and the stevedoring companies, in the course of which the latter gave notice that they expected to continue to render the service and hold the railroads for the customary compensation; but we agree with the lower court that there was no acceptance of this liability, conditional or otherwise, on the part of the railroads. The suit of plaintiff is to recover on the basis of $1.00 per car for the cars "barred" or "re-spotted" by it following the refusal to continue the payments.

The liability of the defendant depends not upon the promises made with respect to the service rendered, nor upon the negotiations had between the representatives of the railroads and the stevedoring companies, but upon the nature of the duty that devolved upon it under the law by virtue of its published tariffs and its contract of transportation. If that duty did not include the "barring" or "re-spotting" of cars, any agreement to pay the shipper or those representing him for performing this service would be contrary to law and void. Merchants' Warehouse Co. v. United States, 283 U.S. 501, 51 S.Ct. 505, 75 L.Ed. 1227; New York, New Haven and Hartford R. R. v. Interstate Commerce Comm., 200 U.S. 361, 26 S.Ct. 272, 50 L.Ed. 515; Terminal Warehouse Co. v. United States, D.C., 31 F.2d 951. If, on the other hand, it was the duty of the railroad company under its contract of transportation to "bar" or "re-spot" the cars for the purpose of loading or unload-

ing, and it refused to perform the duty, the shipper could recover for the cost to it of this service, irrespective of any promise of the railroad company or any denial of liability on its part. Union Pacific R. Co. v. Updike, 222 U.S. 215, 32 S.Ct. 39, 56 L.Ed. 171. And since the stevedoring company was acting under contract with the vessel, representative of the shipper, and was charged with the duty of loading and unloading cars, it rendered the service in the necessary protection of its rights and the performance of its duties under the contract, and a reasonable and proper basis was laid for the recovery of compensation for the service so rendered from the party which should have rendered it. United States ex rel. Members Waste Merchants Ass'n v. Interstate Commerce Com'n, 51 App.D.C. 136, 277 F. 538; Union Pacific R. Co. v. Updike Grain Co., supra. The question is narrowed, therefore, to whether there was any duty resting on the railroad company to "bar" or "re-spot" the cars for the purpose of loading or unloading. We agree with the court below that there was not.

■■ It was the duty of the railroad company under its published tariffs to place the cars for the purpose of loading or unloading within reach of the ship's tackle; but, having once placed them there at the request of the shipper or his agent so that one of the cars was within reach of the tackle, there was no further duty to move them for the shipper's convenience. The railroad was under obligation to make one, but only one, delivery of the cars to the consignee; and where the consignee requested delivery in such way that only one of the string of cars delivered could be placed directly in reach of the tackle, it waived any right to have the others so placed as an incident of delivery. This is settled, we think, by the decision of the Interstate Commerce Commission in Propriety of Operating Practices, 209 I.C.C. 11, approved by the Supreme Court in United States v. American Sheet & Tin Plate Co., 301 U.S. 402, 409 et seq., 57 S.Ct. 804, 81 L.Ed. 1186. As said by the Commission in that case, "If the shipper, for its convenience, prevents the carriers from performing the final placement of cars by a single movement, the carriers need not absorb the costs of switching from points of interchange to points of placement within the plant, when performed by the shipper. * * *"

■ Dealing with a somewhat similar question in Elgin, J. & E. R. Co. v. United States, D.C., 18 F.Supp. 19, 22, a District Court of three judges used the following pertinent language: "It is quite true that section 1(3) of the act, 49 U.S. C.A. § 1(3), provides that 'The term "transportation" as used in this chapter shall include * * * all services in connection with the receipt, delivery * * * and handling of property transported,' but we cannot believe that it was the intention of Congress that a railroad, having received a shipment or an order for empty cars and having transported either to the premises of the consignee or shipper ready for delivery, should, without fault on its part, be compelled to stand by for many hours and perhaps days in order to place the cars for loading or unloading at the particular place and at the particular time most advantageous to the needs of the consignee or shipper. It is true that the courts have held that the place of delivery means the point of loading or unloading, but we are convinced that this construction must be interpreted to mean that there shall always be accorded to the carrier a reasonably immediate access to the point of loading or unloading. Otherwise, the burden placed upon the carrier in many instances would be most inequitable."

■ It is argued that the custom prevailing at the port of Baltimore establishes the duty on the part of the railroad company as embraced within the delivery provided for in the contract of transportation. The evidence shows, however, that no such custom prevailed at the ports of New York or Philadelphia or, in fact, anywhere except at Baltimore; and the custom could not be said to be so general as to result in the addition of an implied term to the contract embodied in the tariffs filed with the Commission. The question, it should be noted, is not one of resorting to usage for the purpose of determining the intent of the parties in the interpretation of a contract, but of resorting to custom to establish a rule of law; for the line haul rate is established by the tariffs as a matter of law and only a custom of such general character as to have the force of law could add to its terms. We think it true here as it was in the American Tin Plate case (301 U.S. at page 410, 57 S.Ct. at page 808, 81 L.Ed. 1186) that "there is no custom or practice which has the force of a rule of

808

law that the line-haul rate includes plant spotting service."

█ On the authority of the cases above cited, we are of opinion that a proper interpretation of the tariffs on file with the Commission excludes any duty on the part of the railroads to render the "barring" or "re-spotting" service here in question, and that the usage or practice heretofore prevailing at the port of Baltimore is not a matter which adds to the duty of the railroads. If, however, this usage or practice is one which may be considered in determining the duty of the railroads under their contract of transportation, the question presented is one for administrative action by the Commission and not one of which the courts may take cognizance in advance of the Commission's action. It involves, not a simple matter of interpreting rates, but a consideration of the complex factors which go into rate making, including practices at competing ports and other matters involving the rate structure of the carriers. Congress has wisely given to the Commission exclusive jurisdiction over these matters; and, if there is anything in the practices and conditions at Baltimore which differentiates the duty of the railroads in making delivery from that declared by the Commission in the cases to which we have adverted, plaintiff's remedy is, not a suit at law in the courts, but a proceeding before the Commission to have its rights declared with respect to the transportation affected and relief afforded accordingly. Primary jurisdiction in such case rests with the Commission. 49 U.S.C.A. § 15(1); Armour & Co. v. Alton R. Co., 312 U.S. 195, 61 S.Ct. 498, 85 L.Ed. 771; Swift & Co. v. United States 62 S.Ct. 948, 86 L.Ed. ——. The suggestion that the stevedoring company has no standing to appeal to the Commission for relief would seem to be without force in view of its contractual duty with respect to handling the shipments upon delivery. Cf. Merchants' Warehouse Co. v. United States, 283 U.S. 501, 512, 51 S.Ct. 505, 75 L.Ed. 1227.

█ It is contended that what constitutes delivery to vessels at a port and the duties arising with relation thereto were not matters within the jurisdiction of the Commission, because at the time the services in question were rendered water carriers were not subject to control by the Commission. It is to be noted, however, that, except with respect to an insignificant portion, less than one-half of one per cent, the shipments moved on inland bills of lading, not on through bills, and in accordance with the tariffs filed with the Commission. The fact that the Commission had no jurisdiction over water carriers is immaterial. It had jurisdiction over rail shipments and full power to determine transportation questions arising with relation thereto, including what was embraced in the duty of making delivery of such shipments and what constituted reasonable practices in connection with delivery. 49 U.S.C.A. § 15(1). There is nothing to the contrary in the decision of the Commission in Matter of Bills of Lading, 52 I.C.C. 671, 738. That decision related to forms of bills of lading; and the portion of the decision relied on related merely to the liability arising on the part of ocean carriers from acceptance of shipments in accordance with the custom of the port. Nothing said in the course of the decision is inconsistent with the plenary power of the Commission over practices of the carrier in connection with delivery. Delivery to vessels which are not subject to the jurisdiction of the Commission is not different from delivery to manufacturing plants which are not subject to its jurisdiction; and its power over the incidents of transportation involved in the delivery must be the same in the one case as in the other.

For the reasons stated, we agree with the court below that no right of recovery was shown by plaintiff; and the judgment appealed from will accordingly be affirmed.

Affirmed.

NORTHCOTT, Circuit Judge.

I concur in the result.