## PASCO COUNTY PEACH ASS'N v. J. F. SOLLEY & CO., Inc.

### No. 5268.

Circuit Court of Appeals, Fourth Circuit.

Jan. 3, 1945.

William C. McLean, of Tampa, Fla. (John A. Sherman, of Baltimore, Md., on the brief), for appellant.

Wilmer H. Driver, of Baltimore, Md., for appellee.

Before PARKER and DOBIE, Circuit Judges, and HARRY E. WATKINS, District Judge.

DOBIE, Circuit Judge.

This case arose under the Perishable Agricultural Commodities Act of June 10,

1930, as amended, 7 U.S.C.A. §§ 499b, 499e (a), 46 Stat. 531, (hereinafter called the Act). There is no material dispute as to the facts.

Pasco County Peach Association (hereinafter called Pasco) owned peaches in Pasco County, Florida, and employed H. W. Springstead as its agent for the purpose of making connections with brokers in the Eastern markets to dispose of its peach crop. On April 13, 1940, Pasco gave Springstead the following letter of introduction to identify him to brokers and others with whom he might be brought in contact:

"April 13, 1940.

"To whom it may concern:

"This is to introduce Mr. Henry Springstead of Tampa, Florida, in connection with marketing our crop of Florida Jewel Peaches.

"These peaches will be marketed under the name of Pasco County Peach Ass'n., Blanton, Florida, office address, Box 2880, Tampa, Florida. The charter for this Ass'n. has been applied for and accepted, and will be completed within the next few days.

"I am president of the Ass'n. and the other officers are, J. E. Hinson, of Tampa; J. J. Taylor, State Chemist, Tallahassee, Florida, and H. S. Pollard, Sales Manager, Florida Favorite Fertilizer Company, Lakeland Florida.

"Mr. Springstead is our sales manager, and this is to advise that *he has full and complete authority to close any transactions relating to the marketing of the peach crop belonging to the Association.*" (Italics ours.)

"Pasco County Peach Association
"RPT/gm Robt. P. Thornton."

Sometime during the same month Springstead presented this letter of introduction to J. F. Solley & Company, Inc. in Baltimore, Maryland, (hereinafter called Solley) and arranged for Solley to dispose of Pasco's peach crop for a commission of ten percent. Springstead, under his contract with Pasco, was to receive ten percent of the net proceeds, to be paid him by Pasco at the end of the 1940 peach season, and he was to remain in the marketing area to assist in the movement of the peaches.

The peaches were shipped from Florida by truck in twelve lots during May and June, 1940, and were consigned to Springstead in care of Solley. · Solley rendered

separate, itemized accounts to Pasco covering each shipment. The account of sale on the first shipment was made to Springstead, and a check for the proceeds was drawn by Solley, payable to Springstead, who delivered the check to Pasco. At this time, through Springstead, Pasco requested Solley to make all future accounting and checks in the name of Pasco. Solley's accounts of sale to Pasco on each of the first ten shipments, made from May 21, to June 14, 1940, showed deductions for commissions, storage, drayage, labor, inspection, re-icing, weighing and other items; but these ten accounts contained no listing of advances made by Solley to Springstead during the period from May 25, 1940, to June 11, 1940.

A memorandum accompanying the accounts for the two final shipments listed these advances in a lump sum of $787.50. Pasco immediately wired its protest of this advancement and requested that payment on the check be stopped. Only after this protest did Solley notify Pasco that the sum was not a single advance but a total of twelve, and that an accounting of all these advances had been withheld by Solley at the express direction of Springstead. Pasco testified that it had not authorized Solley to make advances, nor had it authorized Springstead to collect any proceeds from the sale of its peaches. Witnesses for Solley testified that Springstead had requested these advances to pay hotel bills and travel expenses; but, by reason of set-offs in favor of Pasco, Springstead was not entitled to these advances.

On its failure to recover the amount of these advances from Springstead, Pasco demanded reimbursement from Solley. Solley denied any liability on its part and refused to make payment. Pasco then filed a formal complaint under the Act with the Secretary of Agriculture. After a hearing, the Secretary found that the agent Springstead was neither expressly, impliedly, nor apparently authorized to receive payment of the $787.50, and that by reason of Solley's refusal to pay these sums to Pasco, and Solley's failure to render a prompt accounting, Solley had violated Section 2 of the Act, 7 U.S.C.A. § 499b(4). From this action, Solley, under the provisions of the Act, prosecuted an appeal to the United States District Court for the District of Maryland. The cause was tried de novo and from a judgment entered in favor of Solley, on a directed verdict, Pasco has duly appealed.

We agree with the District Judge that the basic question here is one of agency. That is, was Springstead expressly, impliedly, or apparently authorized to receive from Solley, as part of the proceeds from the sale of Pasco's peaches, the advancements in question, so as to render this transaction a true and correct accounting within the meaning of the Act?

■ The District Court has attached great, if not conclusive, importance to the letter of introduction dated April 13, 1940 (quoted above). Standing alone, this letter would doubtless be entitled to great weight in determining Springstead's authority. Certainly, its language is very broad. However, by subsequent events, to which little weight appears to have been given by the District Court, the ostensible effect of this letter is greatly minimized.

Solley, in accordance with what might be termed a reasonable interpretation of Springstead's authority, in the light of the letter of introduction, made accounting for the first two shipments, and payment for the first, directly to Springstead. However, when Pasco learned of this, it immediately ordered Springstead to request Solley that it make all future accountings and payments to Pasco. It would seem that this request was made known to Solley, since subsequent accounts were rendered, and all further checks were made payable, to Pasco. Nor is it without importance that at the time Solley received this notice only one advance of $49 had been made to Springstead. Yet, in the face of this admitted knowledge, Solley continued to make these advances.

■ Solley strenuously urged before this Court that it is the custom in the business in which it is engaged, to make such advances. Solley is not relying on any usage between the parties to justify its actions, but on a custom of its business, to establish a rule of law in this case. Only a custom of such general character as to have the force of law will sustain Solley's position. See Jarka Corp. of Baltimore v. Pennsylvania Ry., 4 Cir., 130 F.2d 804, 807. Should Pasco have no knowledge (actual or constructive) of the practice relied on, it cannot be said to be absolutely bound by any such custom existing in Baltimore. United States Shipping Board, etc., v. Levensaler, 53 App.D.C. 322, 290 F. 297, 303, certiorari denied 266 U.S. 630, 45 S.Ct. 195, 69 L.Ed. 477; see also 7 Ann.Cas. 651. However, if it were assumed, for purposes

of argument, that such a custom existed in Baltimore and further, that Pasco was aware of this custom, in the face of Pasco's specific notice to Solley, the binding effect of any such custom is greatly impaired. Solley evidently had notice of Pasco's wishes in the matter, and if it had this notice, Solley should have considered this notice before relying so strongly on any apparent authority of Springstead. American Nat. Bank of Sapulpa v. Bartlett, 10 Cir., 40 F. 2d 21. It is well settled that a principal can always limit the authority of his agent, and if the limitation is brought to the attention of the parties dealing with the agent, the limitation must be respected by such parties. Glens Falls Indemnity Co. v. Palmetto Bank, D.C., 23 F.Supp. 844, affirmed 4 Cir., 104 F.2d 671.

 Authority to receive payment may not be implied from the mere fact that an agent has authority to sell. Federal Reserve Bank of Philadelphia v. Algar, D.C., 22 F.Supp. 168, affirmed 3 Cir., 100 F.2d 941, certiorari denied 307 U.S. 631, 59 S.Ct. 834, 83 L.Ed. 1513. See also, 2 Am.Jur., Agency § 126, p. 102, and cases there cited. The presumption of authority on the part of the agent to receive payment of the purchase price when he has possession of the goods is weakened in the instant case by virtue of Pasco's subsequent instructions to Solley.

 Solley contends that Pasco failed to give it any notice of Springstead's lack of authority, and it seems clear from the record that the District Court placed the burden on Pasco to show that it had notified Solley of the limitation on Springstead's authority. The rule was long ago established that when one deals with or through an agent, he assumes all the risks of lack of authority in the agent. Anthony v. Jasper County, 101 U.S. 693, 25 L.Ed. 1005; City of Baltimore v. Reynolds, 20 Md. 1, 83 Am.Dec. 535. One such as Solley here, in dealing with a corporation's agent is not at liberty to rely on the assumption of authority. Philip Carey Co. v. Thyson, 39 App.D.C. 233; Metropolitan Cas.Ins.Co. v. Potomac Builders' Supply Co., 61 App.D.C. 255, 61 F.2d 407. The burden of any necessary diligence to ascertain the agent's authority rests on the party dealing with the agent. Richmond Guano Co. v. E. I. DuPont, etc., Co., 4 Cir., 284 F. 803.

 While it is true that Pasco did not in exact words tell Solley that it would hold Solley responsible for any payments made by way of advancements to Springstead, there is evidence to indicate that Solley had warning from Pasco sufficient to put Solley at least on notice. Certainly Pasco was entitled to deal with Solley on a basis of complete good faith. After Pasco made the request it did, and when the accounts showed no advances to Springstead, Pasco was entitled to, and had good reason to, believe that Solley was aware of its request and was complying therewith. It has been held that where a bill sent to a buyer requires on its face, that payment be made to the seller, the buyer is bound, although he does not read it. Law v. Stokes, 32 N.J.L. 249, 90 Am.Dec. 655. A fortiori, if a buyer actually receives notice he is bound by what is contained in the notice.

 Much is to be desired in Springstead's conduct of Pasco's business. There is little question but that any good faith on the part of Springstead is conspicuous by its absence. Nothing in the law of agency is more firmly established than that an agency cannot, in the absence of an agreement to the contrary, be used for the benefit of the agent himself. It is crystal clear that Solley was aware that the funds advanced were being used for Springstead's own benefit. See Salene v. Queen City Fire Ins. Co., 59 Or. 297, 116 P. 1114, 35 L.R.A., N.S., 438, Ann.Cas.1916D, 1276 and note.

 Finally, Solley's contention here that it dealt with Springstead and had no knowledge of the agency, is conclusively answered by the very words of the letter of introduction upon which it relies to establish Springstead's authority to receive payment of the advances made to him.

 In the light of the considerations which have been discussed above, we think the District Court erred in holding for Solley as a matter of law and in directing a verdict in favor of Solley, the defendant below. On all the facts, we believe the question of the actual or apparent authority of the agent, Springstead, and his power in receiving these advances, to bind the principal, Pasco, are questions which must be left to the jury for decision under proper instructions from the Court.

The judgment of the District Court is reversed and the case is remanded to that Court for further proceedings consistent with this opinion.

Reversed and remanded.